IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TERRENCE PAUL ROBINSON,
      Plaintiff,

vs.                                                            5:03cv25/MMP/MD

ROBERT BOYD, et al.
      Defendant.

## REPORT AND RECOMMENDATION

This case filed pursuant to 28 U.S.C. §1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) is now before the court upon the defendants' special report (doc. 48) filed on October 25, 2004. Plaintiff filed a response to the special report that was docketed on December 9, 2004. (Doc. 52). On December 14, 2004, this court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special report would be construed as a motion for summary judgment (doc. 53). When plaintiff moved for leave to conduct discovery, the court changed the submission date on the motion for summary judgment to February 20, 2005. (Doc. 56). Neither party filed any additional evidence, although plaintiff belatedly filed motions relating to defendant's alleged failure to respond to his discovery requests, which were addressed by separate order.

**Background**

  Plaintiff, an inmate proceeding *pro se*, filed a third amended complaint pursuant to title 28 U.S.C. §1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Doc. 18).  This court issued a Report and Recommendation (doc. 24) recommending that plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  By Order dated June 8, 2004, Senior District Judge Paul adopted the Recommendation except as to plaintiff's retaliation claim against Captain Robert Boyd, which is currently pending.  (Doc. 31 at 5).  The district court concurred that plaintiff would be entitled, at most, to nominal damages and declaratory and injunctive relief.  (*Id.* at 2).

  Plaintiff was incarcerated at the Federal Correctional Institution in Marianna at the time of the events giving rise to this complaint.  On April 3, 2002, Warden Mark Henry implemented a policy prohibiting inmates from wearing knit caps and jackets until winter time. (Doc. 48, exh. 2).  Plaintiff maintains that he caught a cold on April 4 when he was outdoors without a cap or jacket in temperatures below 50 degrees. Therefore, when temperatures were in the low 40's the following day, plaintiff went to Captain Boyd to discuss his concerns.  According to plaintiff, he "politely asked the captain if [he] may wear warm gears because the time was cold and [he] had, in fact, caught a cold."  (Doc. 18, exh. A).  Specifically, plaintiff asked to wear the knit cap he had purchased at the commissary.  The captain responded "It's summer . . . you don't need winter gears . . . you don't see me wearing any. . ." and told plaintiff to return to the unit. As plaintiff turned to leave, he saw a corrections officer with both his knit cap and jacket on. He states that he pointed this out to the captain who then told the officers nearby to "cuff him." (*Id.*)  Elsewhere in the complaint plaintiff describes his contact with Boyd as "respectful initiation of informal resolution with a senior staff member."  (Doc. 18, exh. C-2).

Captain Boyd's description of the exchange was significantly different.  He states in his affidavit that:

> When I attempted to answer inmate Robinson's question [about the policy], he continuously interrupted me and became increasingly argumentative and agitated. Inmate Robinson's conduct escalated to the point that other inmates in the area began taking notice of his behavior and began stopping to observe inmate Robinson's conduct as well as his conversation with me.  Although I ordered inmate Robinson to calm down several times, he did not do so.  Consequently, I ordered inmate Robinson to address his concerns in writing through the administrative remedy process.  Inmate Robinson continued to ignore my orders and I determined his conduct posed an immediate threat to the prison's safe, secure and orderly operation since inmate Robinson's conduct could incite more widespread disruption of the morning's work call.  At the time I made this determination there were several hundred inmates free on the compound.  Accordingly, I instructed the Compound Officers to escort inmate Robinson to administrative detention.

(Doc. 48, exh. 3 at p. 2).

Despite the differing version of events beforehand, the parties do not disagree that after the conversation between Boyd and the plaintiff, plaintiff was placed in the Special Housing Unit ("SHU").  Plaintiff alleges that Captain Boyd put him in the SHU in retaliation for his inquiry about the policy prohibiting the wearing of knit caps, in violation of his first amendment rights to address "matters of concern to the inmate," while Boyd maintains that the SHU placement was made only for concern about institutional safety and security.  Plaintiff alleges that he was not released from SHU until 12 days later when he submitted an "Attempt at Informal Resolution to Staff" claiming that his SHU placement violated his rights.

The responses to the grievances appear inconsistent in their description of what happened.  They variously indicate that plaintiff made an "unwarranted inquiry" (doc. 18, exh. B), exhibited deliberate repeated refusals to obey the captain's orders (doc. 18, exh. C), or that plaintiff became "agitated and argumentative" when the captain approached him about wearing "unauthorized head gear," and there was the

possibility that he was "inciting other inmates." (Doc. 18, exh. D). The grievances do reflect that after an investigation into the incident was conducted, plaintiff was returned to the general population approximately 12 days later. (Doc. 18, exh. D-4).

Plaintiff sought declaratory and injunctive relief, $1,500 in "actual damages," nominal damages, and $7,000 in "punitive damages." In this court's previous recommendation, it noted that the plaintiff is not entitled to actual or punitive damages, a conclusion with which the district court concurred.

## Legal Analysis

### Summary Judgment Standard

On a motion for summary judgment, this court must evaluate the record in the light most favorable to plaintiff as the nonmovant and grant defendants' motion only if the record demonstrates that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002); F.R.C.P. 56. Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake*, 880 F.2d 348, 351 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). Finally, it is improper for the district court to make credibility determinations on a motion for summary judgment. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

**Plaintiff's retaliation claim**

Plaintiff alleges that he was placed in SHU in retaliation for exercising his right to voice his grievance about the policy governing the use of knit caps. Retaliation against an inmate for exercising a constitutional right may be a constitutional violation even if no separate and additional constitutional violation ensues. *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989) (the retaliatory penalty need not rise to the level of a separate constitutional violation to state a claim); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (an inmate may still present a First Amendment retaliation claim even though complaint alleges facts "that might not otherwise be offensive to the Constitution," such as a search or the confiscation and destruction of nonlegal materials); *Wilson v. Silcox*, 152 F.Supp.2d 1345, 1351 (N.D. Fla. 2001)(citing cases). This is because "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising" his constitutional right to free speech, redress of grievances, or similar activity. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (quoting *Thomas,* 880 F.2d at 1242).

Although prisoners have a right to be free from retaliatory punishment for the exercise of a constitutional right, *Adams v. James*, 784 F.2d 1077, 1079-80 (11th Cir. 1986); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985), broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993); *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987); *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987). A complaint which states a claim for retaliation must identify both the retaliatory conduct and the underlying act that prompted the retaliation, which plaintiff has done in this case. See *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002). A prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected. *Rauser v. Horn*, 241 F.3d 330, 333 (3rd Cir. 2001). Defendant does not dispute that the plaintiff had a right to talk to him, only the manner in which it was done. A successful plaintiff must allege

a causal link between the protected activity and the adverse treatment.  *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988);  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983).  Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation.  *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).  For instance, the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation.  *Gayle v. Gonyea*, 313 F.3d 677, 683-84 (2nd Cir. 2002).  However, plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation.  *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 750 (1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).  Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995)).  And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury . . . "  *Crawford-El*, 118 S.Ct. at 1596-97; *Harris*, 65 F.3d at 916-17; *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (Because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).

Furthermore, an inmate may not state a claim of retaliation where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." *Cowans v. Warren,* 150 F.3d 910, 912 (8th Cir. 1998) (quoting *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir.1990) (per curiam)); *see also, Earnest v. Courtney*, 64 F.3d 365, 366-67 (8th Cir. 1995) (per curiam) (assignment to utility squad for gambling not retaliatory); *Henderson v. Baird*, 29 F.3d 464, 465, 469 (8th Cir. 1994) (assault charge not in retaliation for reporting harassment to FBI); *Goff v. Burton*, 7 F.3d 734, 738 (8th

Cir.1993) (alleged retaliatory transfer); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2nd Cir. 1996); *Wilson v. Phipps*, 149 F.3d 1185 (6th Cir. 1998) (Table, text in WESTLAW).

**Conclusion of Law Regarding Material Facts**

The dispositive question in this case is what happened during the conversation between plaintiff and Captain Boyd. Plaintiff maintains that he politely inquired of a supervising officer about the new policy regarding use of knit caps, and that he was ordered handcuffed when he merely pointed out another correctional officer's cold weather attire as he turned to leave.[1]  According to the affidavit of fellow inmate Wilton Daley (doc. 69), the conversation was conducted in low tones and was short-lived.  Daley observed the plaintiff pointing to two CO's before Captain Boyd gestured towards the plaintiff and he was taken to SHU.  Captain Boyd's recollection of events is that plaintiff's conduct went well beyond mere "inquiry," and that his argumentative nature made it necessary to secure him in the SHU to ensure the safe, secure and orderly operation of the facility.   Although each party's description of what happened may appear reasonable as that party has presented it, each version of events clearly cannot be correct.  Depending on whose version of events is found more credible, the issue of whether there was or was not a constitutional violation is simple to resolve. However, this case is not in the proper procedural posture for resolution of credibility determinations.  At this juncture, since the defendant is the moving party, the facts must be taken in the light most favorable to the plaintiff.  Viewing the facts in this light, the plaintiff's placement in SHU after a calm, polite inquiry about the use of cold weather gear could arguably be viewed as "retaliatory" and in violation of plaintiff's constitutional rights, in light of the apparent absence of justification for the placement or any disciplinary action.

---

[1] In plaintiff's affidavit, attached to his response to the special report, he refers to exhibits A through E of his complaint.  The court therefore accepts that for purposes of this motion, the allegations in the attachments to the complaint are sworn under penalty of perjury.

*Case No: 5:03cv25/MMP/MD*

If this court were to grant defendant's motion for summary judgment, it would necessarily have to accept the defendant's version as true.  Whether the event unfolded as portrayed by the plaintiff or by the defendant is for the trier of fact to determine at trial. Therefore, the defendant is not entitled to summary judgment, and the motion for summary judgment should  be denied.

Accordingly, it is respectfully RECOMMENDED:

That the defendant's special report (doc. 48) construed as a motion for summary judgment, be DENIED, and this case be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 26th day of May, 2005.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**