IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**TERRENCE PAUL ROBINSON,**
      **Plaintiff,**

vs.                                                              **5:03cv25/MMP/MD**

**ROBERT G. BOYD,**
      **Defendant.**

## SECOND REPORT AND RECOMMENDATION

This case is before this court after referral by the presiding district judge for additional consideration of the defendant's objections to the court's report and recommendation. (Doc. 78). This recommendation supersedes the previous report and recommendation entered on May 26, 2005. (Doc. 71).

**Procedural Background**

Plaintiff, an inmate proceeding *pro se*, filed a third amended complaint pursuant to title 28 U.S.C. §1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Doc. 18). This court issued a Report and Recommendation (doc. 24) recommending that plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). By Order dated June 8, 2004, Senior District Judge Paul adopted the Recommendation except as to plaintiff's retaliation claim against Captain Robert Boyd, which is currently pending. (Doc. 31 at 5). The district court concurred that plaintiff would be entitled, at most, to nominal damages and declaratory and injunctive relief. (*Id.* at 2).

The third amended complaint was served upon defendant Captain Robert G. Boyd, who filed a special report on October 25, 2004. (Doc. 48). Plaintiff filed a response to the special report (doc. 52), and on December 14, 2004, this court entered an order advising the parties that the special report would be construed as a motion for summary judgment as of January 14, 2005. (Doc. 53). When plaintiff moved for leave to conduct discovery, the court changed the submission date on the motion for summary judgment to February 20, 2005. (Doc. 56). Neither party filed any additional evidence, although plaintiff belatedly filed motions relating to defendant's alleged failure to respond to his discovery requests, which were addressed by separate order. (Doc. 64, 65, 66 & 67). On May 26, 2005, this court entered a recommendation that the defendant's motion for summary judgment be denied, finding that there were genuine issues of material fact precluding summary judgment. On January 4, 2006, the district court rejected the recommendation and remanded to the undersigned for consideration of the issues raised in the defendant's objections to the recommendation.

**Factual Background**

Plaintiff was incarcerated at the Federal Correctional Institution in Marianna at the time of the events giving rise to this complaint. On April 3, 2002, Warden Mark Henry implemented a policy prohibiting inmates from wearing knit caps and jackets until winter time. (Doc. 48, exh. 2). Plaintiff maintains that he caught a cold on April 4, 2002 when he was outdoors without a cap or jacket in temperatures below 50 degrees. Therefore, when temperatures were in the low 40's the following day, plaintiff went to Captain Boyd to discuss his concerns. According to plaintiff, he "politely asked the captain if [he] may wear warm gears because the time was cold and [he] had, in fact, caught a cold." (Doc. 18, exh. A). Specifically, plaintiff asked to wear the knit cap he had purchased at the commissary. The captain responded "It's summer . . . you don't need winter gears . . . you don't see me wearing any. . ."

and told plaintiff to return to the unit. As plaintiff turned to leave, he saw a corrections officer with both his knit cap and jacket on. He states that he pointed this out to the captain who then told the officers nearby to "cuff him." (*Id.*) Elsewhere in the complaint plaintiff describes his contact with Boyd as "respectful initiation of informal resolution with a senior staff member." (Doc. 18, exh. C-2).

Plaintiff also submitted the affidavit of fellow inmate Wilton Daley, a witness to the event in question. (Doc. 69). Mr. Daley states that on April 5, 2002, while he and plaintiff were walking to the housing unit in 41 degree weather, plaintiff complained he had caught a cold and they discussed the recent memorandum prohibiting the inmates from wearing caps and jackets. The men noticed three corrections officers (CO's) wearing jackets, one of whom also wore a cap. Captain Boyd stood nearby. Plaintiff indicated his intent to talk to Captain Boyd about getting special permission to wear caps and jackets in light of the cold spell. Daley tried to dissuade plaintiff from doing so in light of Boyd's "reputation of putting inmates in the special housing unit (SHU) without cause." (Doc. 69 at 3). Daley continued walking, although he looked back to see what was happening. He states that he could not hear what was being said because the conversation was conducted in low tones, but he saw that less than one minute after plaintiff went to talk to the defendant, plaintiff pointed to the nearby CO's. Defendant simultaneously pointed to the plaintiff, and two CO's advanced toward plaintiff, searched him, handcuffed him and escorted him to the SHU. By Daley's account then, the entire interaction took place in approximately one minute.

Captain Boyd's description of the exchange was significantly different. He states in his affidavit that:

> When I attempted to answer inmate Robinson's question [about the policy], he continuously interrupted me and became increasingly argumentative and agitated. Inmate Robinson's conduct escalated to the point that other inmates in the area began taking notice of his behavior and began stopping to observe inmate Robinson's conduct as well as his conversation with me. Although I ordered inmate Robinson

>to calm down several times, he did not do so. Consequently, I ordered inmate Robinson to address his concerns in writing through the administrative remedy process. Inmate Robinson continued to ignore my orders and I determined his conduct posed an immediate threat to the prison's safe, secure and orderly operation since inmate Robinson's conduct could incite more widespread disruption of the morning's work call. At the time I made this determination there were several hundred inmates free on the compound. Accordingly, I instructed the Compound Officers to escort inmate Robinson to administrative detention.

(Doc. 48, exh. 3 at p. 2).

Despite the differing version of events beforehand, the parties do not disagree that after the conversation between Boyd and the plaintiff, plaintiff was placed in the Special Housing Unit ("SHU"). Plaintiff alleges that Captain Boyd put him in the SHU in retaliation for his inquiry about the policy prohibiting the wearing of knit caps, in violation of his first amendment rights to address "matters of concern to the inmate," while Boyd maintains that the SHU placement was made only for concern about institutional safety and security. Plaintiff alleges that he was not released from SHU until 12 days later when he submitted an "Attempt at Informal Resolution to Staff" claiming that his SHU placement violated his rights.

The responses to the grievances are not consistent in their description of what happened. They variously indicate that plaintiff made an "unwarranted inquiry" (doc. 18, exh. B), exhibited deliberate repeated refusals to obey the captain's orders (doc. 18, exh. C), or that plaintiff became "agitated and argumentative" when the captain approached him about wearing "unauthorized head gear," and there was the possibility that he was "inciting other inmates." (Doc. 18, exh. D). The grievances also confirm plaintiff's contention that after an investigation into the incident was conducted, plaintiff was returned to the general population approximately 12 days later. (Doc. 18, exh. D-4).

Plaintiff initially sought declaratory and injunctive relief, $1,500 in "actual damages," nominal damages, and $7,000 in "punitive damages." In this court's

initial recommendation, it noted that the plaintiff is not entitled to actual or punitive damages, a conclusion with which the district court concurred. (See doc. 31 at 2 "plaintiff failed to allege more than *de minimis* physical injury and therefore . . . is entitled, at most, to nominal damages and declaratory and injunctive relief.")

## Legal Analysis

### Summary Judgment Standard

On a motion for summary judgment, this court must evaluate the record in the light most favorable to plaintiff as the nonmovant and grant defendant's motion only if the record demonstrates that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Harris v. Coweta County Georgia,* 433 F.3d 807, 811 (11th Cir. 2005); *Lee v. Ferraro,* 284 F.3d 1188, 1190 (11th Cir. 2002); F.R.C.P. 56. Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake*, 880 F.2d 348, 351 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). Finally, it is improper for the district court to make credibility determinations on a motion for summary judgment. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

**Qualified Immunity**

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harris v. Coweta County Georgia,* 433 F.3d 807, 811 (11th Cir. 2005) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (internal citations and quotation marks omitted)). This immunity "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation[.]" *Id.* (Quoting *Lee,* 284 F.3d at 1193-94 (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987))). Thus, in order to be protected by the shield of qualified immunity, the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Harris,* 433 F.3d at 811 (citing *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002))).

This next step consists of a two-part inquiry, set forth in *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). First the court must ask whether, taken in the light most favorable to the plaintiff as the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *Harris*, 433 F.3d at 812 (citing *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156). If, assuming the plaintiff's allegations are true, no such right would have been violated, the analysis ends here. However, if a constitutional violation can be made out on the plaintiff's facts, the court then must consider "whether, at the time of the incident, every objectively reasonable [officer] would have realized the acts violated already clearly established federal law." *Harris*, 433 F.3d at 812 (quoting *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1278-79 (11th Cir. 2004) (citing *Saucier*, 533 U.S. at 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272)). If that is the case, the protections of qualified immunity do not apply.

**Plaintiff's retaliation claim**

Viewed in the light most favorable to the plaintiff, plaintiff was placed in SHU in retaliation for having approached Captain Boyd to complain about the policy governing the use of knit caps and jackets and for having sought exception to this policy. Plaintiff was returned to the general population 12 days later after an investigation, although no disciplinary hearing appears to have been held.

It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights. See *Boxer X v. Harris,* ___ F.3d ___, 2006 WL 196972 (11th Cir. 2006); *Redd v. Conway*, ___ F.3d ___, 2005 WL 3528932 (11th Cir. 2005); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir.1997); *Wright v. Newsome*, 795 F.2d 964 968 (11th Cir. 1986); *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986). In the prison setting "[t]he state may not burden [First Amendment rights] with practices that are not reasonably related to legitimate penological objectives … nor act with the intent of chilling that First Amendment right." *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (citing *Turner v. Safley*, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 2260-61, 96 L.Ed.2d 64 (1987), and *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989)).

Retaliation against an inmate for exercising a constitutional right may be a constitutional violation even if no separate and additional constitutional violation ensues. *Farrow,* 320 F.3d at 1248 (citing *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989) (the retaliatory penalty need not rise to the level of a separate constitutional violation to state a claim)); *see also Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (an inmate may still present a First Amendment retaliation claim even though complaint alleges facts "that might not otherwise be offensive to the Constitution," such as a search or the confiscation and destruction of nonlegal materials); *Wilson v. Silcox*, 152 F.Supp.2d 1345, 1351 (N.D. Fla. 2001)(citing cases). This is because "[t]he gist of a retaliation claim is that a prisoner is penalized for

exercising" his constitutional right to free speech, redress of grievances, or similar activity. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (quoting *Thomas*, 880 F.2d at 1242). In general, a prisoner may establish retaliation by "demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'" *Farrow*, 320 F.3d at 1248 (citing *Wildberger*, 869 F.2d at 1468). In this case, as discussed further below, plaintiff's description of his conversation with Captain Boyd is reasonably construed as an attempt to informally resolve his 'grievance' regarding the cold-weather clothing policy without having to resort to the written grievance process.

A complaint which states a claim for retaliation must identify both the retaliatory conduct and the underlying act that prompted the retaliation, which plaintiff has done in this case. See *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). A successful plaintiff must allege a causal link between the protected activity and the adverse treatment. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). For instance, the temporal proximity of an allegedly retaliatory misbehavior report to a prisoner's filing of a grievance may serve as circumstantial evidence of retaliation. *Gayle v. Gonyea*, 313 F.3d 677, 683-84 (2nd Cir. 2002). To succeed in his claim a plaintiff must also come forward with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland,* 65 F.3d

802, 807 (9th Cir. 1995) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury . . . " *Crawford-El*, 118 S.Ct. at 1596-97; *Harris*, 65 F.3d at 916-17; *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (Because claims of retaliation may be easily fabricated, they should be reviewed with skepticism). Here, although plaintiff offers no direct evidence of defendant's motive tantamount to a "smoking gun," such as a contemporaneous statement of intent by the defendant, he does submit other evidence in support of his claim. His verified complaint details his version of the conversation, including the fact that it was brief, calm and polite. The affidavit of inmate witness Wilton Daley supports this, and includes a comment about defendant Boyd's "reputation" for placing inmates in confinement without ample justification. Plaintiff has also submitted the grievances he filed after the incident, and argues that the seemingly inconsistent statements contained in the responses are an attempt to cover up defendant's unlawful retaliatory motive. Finally, he suggests that a reasonable inference from the fact that he was released from confinement after investigation is that the initial SHU placement had been unwarranted.

A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision "subject to exhaustive challenge," solely because he was engaged in an activity protected by the First Amendment. *Adams*, 784 F.2d at 1082; Adams v. James, 797 F.Supp. 940, 949 (M.D.Fla.1992). An inmate may not state a claim of retaliation where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." *Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998) (quoting *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir.1990) (per curiam)); *see also, Earnest v. Courtney*, 64 F.3d 365, 366-67 (8th Cir. 1995) (per curiam) (assignment to utility squad for gambling not retaliatory); *Henderson v. Baird*, 29 F.3d 464, 465, 469 (8th Cir. 1994) (assault charge not in retaliation for reporting harassment to FBI); *Goff v.*

Case 5:03-cv-00025-MP-MD   Document 79   Filed 02/13/06   Page 10 of 17

Page 10 of 17

*Burton*, 7 F.3d 734, 738 (8th Cir.1993) (alleged retaliatory transfer); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2nd Cir. 1996); *Wilson v. Phipps*, 149 F.3d 1185 (6th Cir. 1998) (Table, text in WESTLAW). In his objection to the previous report and recommendation, the defendant states that the court failed to properly consider that plaintiff was not entitled to cause a potential disturbance in prison facilities and was sent to SHU for that reason. Obviously, if the defendant's version of events were taken as true, no claim for retaliation would lie, regardless of the legitimacy of plaintiff's initial encounter with the defendant. However, at this juncture, the facts must be taken in the light most favorable to the plaintiff, and plaintiff's version of events is that he had done nothing to warrant any disciplinary action.

## Standard of Review

The Eleventh Circuit has not yet established a clear standard at summary judgment for determining the validity of First Amendment retaliation claims in the prison setting. In the public employment setting, however, it has adopted a four-stage inquiry based on the Supreme Court's decisions in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), to determine whether a state actor has unlawfully retaliated against an employee because of the employee's protected speech. See *Chesser v. Sparks*, 248 F.3d 1117 (11th Cir. 2001); *Stanley v. City of Dalton*, 219 F.3d 1280 (11th Cir. 2000); *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989). In such cases, at the first stage the court considers as a matter of law whether the speech at issue may be fairly characterized as constituting speech on a matter of public concern. *Chesser*, 248 F.3d at 1122. If it may be, at the second stage the court applies a balancing test to determine whether as a matter of law the employee's free speech interest outweighs the interest of the state in promoting the efficiency of the public services it performs through its employees. *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. If the employee's interests outweigh those of the state, the inquiry proceeds to the third stage, which

asks whether as a matter of fact "there is a 'substantial' causal link between the employee's speech and the adverse employment action." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing "*Bryson*" test); see also *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1157 (11th Cir. 2002) (citing *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. 568). The record as a whole should be examined to determine whether a plaintiff has met his burden of showing that the protected conduct was a substantial or motivating factor in a government employment decision. *Stanley*, 219 F.3d at 1291 (citations omitted).[1] With respect to the third stage of the four-stage inquiry, "[w]here causation is lacking, an employee's claim of retaliatory discharge must fail …." *Mize*, 93 F.3d at 742.

If the employee shows that his speech was a substantial motivating factor in the adverse decision, the court must address at the fourth and final stage whether the employer has shown by a preponderance of the evidence that it would have reached the same decision regardless of the protected conduct. *Chesser,* 248 F.3d at 1123; *Bryson*, 888 F.2d at 1566 (quoting *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568). See also *Vista Community Services v. Dean,* 107 F.3d 840, 844-45 (11th Cir. 1997). "This fourth stage has been referred to as a 'but for' test; the employer must show that 'its legitimate reason, standing alone, would have induced it to make the same decision.'" *Bryson*, 888 F.2d at 1566 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989)). In other words, the question at stage four is whether the plaintiff would have suffered the adverse action "but for"

---

[1] In making this inquiry the court may consider such factors as whether there is a closeness in time between the protected speech and the adverse action such that retaliatory intent may be inferred; whether any comments or actions by the defendant related to the protected speech; whether the asserted reason for the adverse action changed over time; and whether there is circumstantial evidence of a causal nexus between the protected speech and the adverse action from which retaliatory intent may be inferred. *Stanley*, 219 F.3d at 1291, n. 20 (citations omitted). In determining whether circumstantial evidence exists court may inquire as to who initiated any internal investigations or termination proceedings, whether there was any evidence of the decision-maker's hostility to the speech in question, or whether the defendant had a motive to retaliate. *Id*.

his exercise of speech protected by the First Amendment. See *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 417, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979).

While there is a lack of clear guidance from the Eleventh Circuit with regard to First Amendment retaliation claims made by prisoners, other circuits have addressed the matter, resulting in the development of an instructive body of case law. The Second, Third, Sixth, and Seventh Circuits have expressly applied the *Mount Healthy* burden-shifting framework to retaliation claims in the prison context. See *Rauser v. Horn*, 241 F.3d 330 (3rd Cir. 2001); *Thaddeus-X*, 175 F.3d at 386; *Graham v. Henderson*, 89 F.3d 75, 80 (2nd Cir. 1996); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir.1996). Under this line of cases the plaintiff must prove: (1) that he was engaged in constitutionally protected activity; (2) that he suffered adverse action such that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that "there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002) (citing *Thaddeus-X* ); see also *Rauser*, 241 F.3d at 333-34; *Dawes,* 239 F.3d at 492-93. If the prisoner establishes that his exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct, the burden then shifts to the defendant to show that the same action would have been taken even absent the protected conduct.[2] *Brown*, 312 F.3d at 787; *Rauser*, 241 F.3d at 333-34; *Babcock*, 102 F.3d at 275. In the context of prisoner cases, in determining whether a causal connection exists the court may choose to consider such factors as the

---

[2]In applying the *Mount Healthy* burden-shifting framework courts should incorporate the deferential balancing test articulated in *Turner v. Safley*, 482 U.S. at 89, 107 S.Ct. 2254 (holding that official conduct that impinges on the constitutional rights of an inmate is valid if it is "reasonably related to legitimate penological interests"). See *Rauser*, 241 F.3d at 334; see also *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (stating that prison officials are allowed wide discretion to provide for the security, safety, and orderly operation of prison facilities), modified on other grounds, *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.

*Case No: 5:03cv25/MMP/MD*

temporal proximity between the prisoner's protected activity and the defendant's adverse action, as well as statements made by the defendant regarding his motivations. See *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2nd Cir. 1995). A prisoner can establish retaliatory motive by alleging a chronology of events from which a retaliatory animus on the part of the defendant could reasonably be inferred. *Woods*, 60 F.3d at 1166 (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988)).

Other circuits have also recognized *Mount Healthy* in reviewing retaliation claims by prisoners but without adopting its burden-shifting framework. See *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (requiring prisoner to come forward with direct or circumstantial evidence that "but for the retaliatory motive, the incidents to which he refers ... would not have taken place"); *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993) (acknowledging *Mount Healthy* but stating that in retaliatory transfer case prisoner must prove "but for" the retaliatory motive the allegedly unconstitutional conduct would not have occurred); cf. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citing *Mount Healthy* but indicating that burden remains on prisoner to show that "but for" the retaliatory motive the complained of incident would not have occurred); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) (same).[3]

The Eleventh Circuit has not yet expressly applied the *Pickering/Mount Healthy* analysis in the context of a prisoner First Amendment retaliation claim. As noted above, however, it has long applied this analysis in the employment setting. See *Bryson, supra*; see also *Chesser* and *Stanley, supra*. In addition, as previously discussed, numerous circuit courts of appeals have found prisoner and employment retaliation claims sufficiently analogous to adopt or acknowledge this standard in

---

[3] In *Adams v. Wainwright*, 875 F.2d 1536, 1537 (11th Cir. 1989) (per curiam), a First Amendment retaliation case in the prisoner context, the Government urged the Eleventh Circuit to adopt the "but for" standard set forth by the First Circuit in *McDonald*, in which the burden remains on the prisoner/plaintiff rather than shifting to the defendant. Without discussion the court declined to do so, "to the extent that the 'but for' test places a greater burden of proof on the inmate." *Adams*, 875 F.2d at 1537 (citing *Hall v. Evans*, 842 F.2d 337 (11th Cir. 1988) (table decision vacating district court order granting summary judgment to Defendants based on "but for" analysis)).

*Case No: 5:03cv25/MMP/MD*

prisoner cases, either with or without the burden-shifting framework.[4] See *Rauser, Thaddeus-X, Graham*, and *Babcock, supra* (applying the *Mount Healthy* burden-shifting analysis), and *Peterson, Goff, Woods*, and *McDonald, supra* (referencing *Mount Healthy* but not applying the burden-shifting analysis); see also *Adams v. Wainwright*, 875 F.2d at 1537 (declining to adopt "but for" standard in prisoner First Amendment retaliation case which would place greater burden of proof on inmate). This court has previously applied the *Mount Healthy* burden-shifting framework to First Amendment claims of retaliation brought by prisoners and shall do so in this case. See *Pate v. Peel,* 256 F.Supp.2d 1326, 1337-40 (N.D. Fla. 2003).

## Conclusion of Law Regarding Material Facts

As noted above, this case was remanded in part for a consideration of the issue of qualified immunity. Because defendant asserts his entitlement to qualified immunity, the court must first consider whether plaintiff's allegations regarding defendant's conduct, if true, establish the violation of a constitutional right. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. To make this showing and survive summary judgment on his retaliation claim, plaintiff must demonstrate from the evidence that a genuine issue of material fact exists on the questions whether he was engaged in constitutionally protected activity; whether he suffered adverse action; and whether his exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. See *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. 568; *Stanley*, 219 F.3d at 1290; *Rauser*, 241 F.3d at 333-34; *Thaddeus-X*, 175 F.3d at 386; *Dawes,* 239 F.3d at 492-93.

---

[4] It is also worth noting that the elements of a prima facie case in retaliation claims brought by prisoners under the First Amendment in the Second, Third, and Sixth Circuits, as set out above, are quite similar to those set forth by the Eleventh Circuit in the context of retaliation claims brought under 42 U.S.C. § 2000e-3(a). The Eleventh Circuit has explained that in such cases the plaintiff must show (1) that he was engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal connection between the two events. *Brochu*, 304 F.3d at 1155.

The critical issue in this analysis is what happened during the conversation between plaintiff and Captain Boyd, an issue about which there is significant and material factual dispute. Plaintiff maintains that he politely inquired of a supervising officer about the new policy regarding use of knit caps, and that he was ordered handcuffed when he merely pointed out another correctional officer's cold weather attire as he turned to leave.[5] According to the affidavit of fellow inmate Wilton Daley (doc. 69), the conversation was conducted in low tones and was short-lived. Daley observed the plaintiff pointing to two CO's before Captain Boyd gestured towards the plaintiff and he was taken to SHU. Captain Boyd's recollection of events is that plaintiff's conduct went well beyond mere "inquiry," and that his argumentative nature made it necessary to secure him in the SHU to ensure the safe, secure and orderly operation of the facility. Defendant does not dispute that plaintiff was entitled to speak to him to address matters of concern, only the disrespectful manner in which he alleges it was done.

Although each party's description of what happened may appear reasonable as that party has presented it, each version of events clearly cannot be correct. Depending on whose version of events is found more credible, the issue of whether there was or was not a constitutional violation is simple to resolve. Although the trier of fact may ultimately conclude otherwise, at this juncture the court must take the facts in the light most favorable to the plaintiff. After so doing, the court accepts that plaintiff has met his burden in demonstrating that he engaged in constitutionally protected activity in his attempt to informally resolve the knit cap issue through his conversation with Captain Boyd.[6] Regardless of whether a liberty interest or

---

[5]In plaintiff's affidavit, attached to his response to the special report, he refers to exhibits A through E of his complaint. The court therefore accepts that for purposes of this motion, the allegations in the attachments to the complaint are sworn under penalty of perjury. *Sammons v. Taylor*, 967 F.2d 1533, 1545 n. 5 (11th Cir. 1992); *Perry v. Thompson*, 127 786 F.2d 1093, 1095 (11th Cir. 1986).

[6]An inmate has a First Amendment right to file grievances against prison officials, but only if the grievances are not frivolous. See *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("Depriving someone of a frivolous claim ⋯ deprives him of nothing ⋯"). The court accepts for purposes of this motion

**plaintiff's due process rights may have been implicated,[7] clearly, plaintiff's placement in SHU was, or was intended to be, an adverse action. And, clearly, his conversation with Captain Boyd was a substantial or motivating factor in this placement.**

**The next question in the qualified immunity analysis is whether the right allegedly violated, the right to be free from retaliation for the exercise of a First Amendment right, was clearly established. As noted above, it has long been established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights. See *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.1997); *Wright v. Newsome*, 795 F.2d 964 968 (11th Cir. 1986); *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986). Placing an inmate in SHU for no other reason than to retaliate against him for exercising a constitutional right, as alleged by plaintiff, clearly would not be protected by the shield of qualified immunity.**

**In his objections, the defendant asks that this court give deference to the regulatory nature of his action in placing plaintiff in special housing and that the court presume that his actions were reasonable. Absent a factual determination of what happened on the date of the conversation in question, this court cannot conclude that the defendant's actions were reasonable, because to do so would**

---

that it was not frivolous to dispute a policy disallowing the use of cold weather protective gear when temperatures were in the low 40's. Although the court is unaware of any case law dealing specifically with a prisoner's First Amendment rights to attempt to redress grievances orally, rather than in writing, based on plaintiff's characterization of his conversation as an attempt to avoid the written grievance process, it accepts that the First Amendment protections extend to plaintiff's speech as well.

[7]*Sheley v. Dugger*, 833 F.2d 1420, 1424 (11th Cir. 1987) (holding that a liberty interest in remaining in the general population is created for an inmate by the FDOC's rules and regulations concerning administrative segregation and close management); cf. *Sandin v. Conner*, 515 U.S. 472 (1995) (holding that 30-day placement in segregated confinement was not a due process violation); *Welch v. Bartlett,* 196 F.3d 389, 392 (2nd Cir. 1999) (examining conditions of confinement in SHU to determine whether they constituted an atypical and significant hardship). It is not necessary that the SHU placement itself was a constitutional violation for plaintiff to state a constitutional claim. *Farrow; Wright; supra.*

require a credibility determination. The court reiterates that at this juncture, since the defendant is the moving party, the facts must be taken in the light most favorable to the plaintiff. Shading the facts in this light, there was no apparent justification for plaintiff's placement in SHU or any disciplinary action after a calm, short-lived, polite conversation questioning the prohibition on the use of cold weather gear in inclement weather. Therefore, the defendant is not entitled to summary judgment, and the motion for summary judgment should be denied.

Accordingly, it is respectfully RECOMMENDED:

That the defendant's special report (doc. 48) construed as a motion for summary judgment, be DENIED, and this case be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 13th day of February, 2006.

/s/ *Miles Davis*
  **MILES DAVIS**
  **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. A copy of objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**