IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TERRENCE PAUL ROBINSON,

    Plaintiff,

v.                                    CASE NO. 5:03-cv-00025-MP-MD

ROBERT G BOYD,

    Defendant.

_____/

## O R D E R

This matter is before the Court on Doc. 79, Second Report and Recommendation of the Magistrate Judge, recommending that defendant's motion for summary judgment be denied. For the reasons which follow, the Report and Recommendation is rejected and summary judgment is granted in favor of the defendant based on qualified immunity.

Plaintiff was incarcerated at the Federal Correctional Institution in Marianna at the time of the events giving rise to the complaint in this case. On April 3, 2002, Warden Mark Henry implemented a policy prohibiting inmates from wearing knit caps and jackets until winter time. (Doc. 48, exh. 2). Plaintiff maintains that he caught a cold on April 4, 2002 when he was outdoors without a cap or jacket in temperatures below 50 degrees. Therefore, when temperatures were in the low 40's the following day, plaintiff went to Captain Boyd to discuss his concerns. According to plaintiff, he "politely asked the captain if [he] may wear warm gears because the time was cold and [he] had, in fact, caught a cold." (Doc. 18, exh. A). Specifically, plaintiff asked to wear the knit cap he had purchased at the commissary. The captain responded "It's summer . . . you don't need winter gears . . . you don't see me wearing any. . ." and told plaintiff to return to the unit. As plaintiff turned to leave, he saw a corrections officer with both

his knit cap and jacket on. He states that he pointed this out to the captain who then told the officers nearby to "cuff him." (Id.)

The parties agree that after the conversation between the plaintiff and Captain Boyd, plaintiff was placed in the Special Housing Unit ("SHU"). Plaintiff alleges that Captain Boyd put him in the SHU in retaliation for his inquiry about the policy prohibiting the wearing of knit caps, in violation of his first amendment rights to address "matters of concern to the inmate," while Boyd maintains that the SHU placement was made only for concern about institutional safety and security. Plaintiff alleges that he was not released from SHU until 12 days later when he submitted an "Attempt at Informal Resolution to Staff" claiming that his SHU placement violated his rights.

Plaintiff, proceeding pro se, filed suit, and eventually filed a third amended complaint pursuant to title 28 U.S.C. §1331 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Doc. 18). This court issued an order dated June 8, 2004, dismissing all claims except for plaintiff's retaliation claim against Captain Robert Boyd, which is currently pending. (Doc. 31 at 5). The Court also held that plaintiff would be entitled, at most, to nominal damages and declaratory and injunctive relief. (Id. at 2).  Thereafter, the Magistrate Judge issued a second Report and Recommendation which the Court rejected so that the Magistrate Judge could consider the qualified immunity arguments raised by the defendant in his objections.  The Magistrate Judge has now done so and has issued the instant Report and Recommendation.

In the Report and Recommendation, the Magistrate Judge characterized the evidence submitted by Plaintiff as follows.

Viewed in the light most favorable to the plaintiff, plaintiff was placed in SHU in retaliation for having approached Captain Boyd to complain about the policy governing the use of knit caps and jackets and for having sought exception to this policy.

The Court agrees with the Defendant, however, that the above characterization does not fully describe the Plaintiff's own view of the altercation with Captain Boyd. That is, Plaintiff actually alleged the following:

> 1. On 4/5/02 at 0720 hrs, I politely asked the Captain if I may wear warm gears because the time was cold and I had, in fact, caught a cold. Specifically, I asked to wear the knitcap which I bought at the commissary.
> 2. The captain responded: "It's summer...you don't need winter gears...you don't see me wearing any..." and finally, he said, "go on to your unit." As I turn to leave, I saw an officer with both his knitcap and jacket on. When I pointed this out to the Captain, he told the officers near him to: "cuff him."

(Exh. A to doc. 18) Thus, in Plaintiff's own words, it was not the seeking of an exception to the policy of "no knit caps" that triggered the captain's order to restrain plaintiff. Instead, the Plaintiff's own narrative shows that the captain ordered Plaintiff restrained only after Plaintiff refused to obey the order to return to his unit and instead continued to argue with the captain.

The Supreme Court has repeatedly held that ensuring the safety of inmates and staff is "perhaps the most fundamental responsibility of the prison administration." Hewitt v. Helms, 459 U.S. 460, 473, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983), overruled on a different point by, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Court has also recognized that "[a] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators" and that judgments regarding the safety of the prison are based largely on "purely subjective evaluations and on predictions of future behavior." Here, even under the version of the facts set out by Plaintiff, he refused to follow a direct order to cease discussing the

Case 5:03-cv-00025-MP-MD   Document 92   Filed 09/14/06   Page 4 of 4

issue and to return to his unit, and he did so in an environment where other inmates were observing the disagreement.   Prison officials have the right, and indeed the responsibility, to secure prisoners who are not following directions, especially in an open environment where many other inmates are present and able to observe the interaction.

Thus, under the two-part test set out in Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), the Court finds that, even taken in the light most favorable to the plaintiff, the facts alleged do not show the defendant's conduct violated a constitutional right. Moreover, the Court cannot conclude that "at the time of the incident, every objectively reasonable [officer] would have realized the acts violated already clearly established federal law." Harris v. Coweta County, Ga., 433 F.3d 807, 812 (11th Cir. 2005) (quoting Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir.2004).  Accordingly, the captain is entitled to summary judgment based on qualified immunity.  It is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's motion for extension of time, doc. 83, is granted, *nunc pro tunc* to March 17, 2006.
2. Plaintiff's motion for default judgment, doc. 86, and Plaintiff's motion to strike Defendant's objection to the Report and Recommendation or to extend time (doc. 87) is also denied, although the Court fully reviewed doc. 91, the Plaintiff's reply to the Defendant's objections to the Report and Recommendation, in reaching its decision.
3. The Report and Recommendation is rejected, and the Defendant's motion for summary judgment is granted.  The Clerk is directed to close this case.

**DONE AND ORDERED** this  _14th_   day of September, 2006



Maurice M. Paul, Senior District Judge